FILED
 2005 Feb-22  PM 03:36
U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES RADFORD BERRY,** | } | |
| | } | |
| Appellant, | } | |
| | } | |
| vs. | } | **CASE NO. CV 04-B-2212-E** |
| | } | |
| **AUTOMOTIVE FINANCE CORPORATION,** | } | |
| | } | |
| | } | |
| Appellee. | } | |

**MEMORANDUM OPINION**

This case is before the court on appeal from a decision of the United States Bankruptcy Court for the Northern District of Alabama. The bankruptcy court held that a debt owed by debtor and appellant James Radford Berry to creditor and appellee Automotive Finance Corporation ("AFC") was nondischargeable. Upon consideration of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the decision of the bankruptcy court is due to be affirmed.

**I. FACTUAL SUMMARY**

Appellant was the president and sole owner of Berry & Cox Automotive, Inc. ("Berry & Cox"), a used vehicle dealership in Albertville, Alabama. In that capacity, Mr. Berry

applied for a floor plan financing agreement[1] with appellee on July 23, 2002.  (Appellee's Ex. 4.)  He also executed an unconditional and continuing guaranty that held him personally liable to appellee for any default or outstanding balances.  (*Id.* at 12-13.)  AFC approved the application and established a line of credit for floor plan financing of the inventory of Berry & Cox.  This agreement gave AFC a security interest in the vehicles purchased by Berry & Cox and in the proceeds of the sale and disposition of those vehicles.

Ray Sanders, a loan office manager for AFC who was responsible for its account with Berry & Cox, testified at length before the bankruptcy court. (Tr. at 5-47.)  He testified that Berry & Cox requested an "outside buy" on a 2001 Ford truck on December 11, 2002.  (*Id.* at 16-17.)  An "outside buy" occurs when a dealer purchases a vehicle from someone other than an auction and requests funding from the dealer's floor plan financier.  (*Id.* at 15-16; Doc. 3 at 7.)  The outside buy on the 2001 Ford is evidenced by a standard electronic mail message Sanders received through AFC's secure dealer website on December 11, 2002. (Appellee's Ex. 10 at 3.)  That message stated that Berry & Cox "indicated that the [Ford truck] was purchased on 12/11/2002 from non-Auction for the amount of $10000," and it also requested that AFC "fund the vehicle at [its] discretion."  (*Id.*)  At that time, AFC issued

---

[1] Ray Sanders, a loan office manager for AFC, (Tr. at 5), testified that a floor plan financing agreement "enables dealers to establish a line of credit for [dealers] to purchase automobiles across the country and also from other automobile dealers.  They have a line of credit and their terms and they are allowed to purchase cars." (Tr. at 10-11.)  After those purchases were made, AFC would retain the title on those automobiles until the dealer sold them; shortly thereafter, the dealer would send payment to AFC in exchange for the title.  (*Id.* at 11.)

a check for $10,000 to Berry & Cox for the financing of the truck, (*Id.* at 1), and Berry & Cox sent the vehicle's title to AFC, (Tr. at 18; Appellee's Ex. 10 at 2).

Appellant became delinquent on its account in January 2003.[2] At that time, Sanders called Berry regarding the delinquent amounts, whereupon Berry referred him to his son Adam Berry ("Adam"), who he said was the manager of the automobile dealership. Adam assured Sanders that Berry & Cox would immediately send the money owed. (Tr. at 20.) Seven days later, having not received any money from the dealership, Sanders went to the Berry & Cox lot in Albertville. There he found three vehicles missing: the Ford truck and two other vehicles that were later recovered from repair shops in the area. (*Id.* at 21; Doc. 3 at 6-7.) Adam told Sanders that the missing truck was at the Georgia Dealers Auto Auction ("Georgia Dealers"). (Tr. at 22.) However, upon contacting Georgia Dealers, Sanders was informed that it did not have the truck. (*Id.*) AFC attempted to obtain a security lien on the truck through the Alabama Department of Revenue on February 28, 2003, (R. 23; Appellee's Ex. 9), but was informed by that agency that it had previously issued a title to that vehicle to some other entity, (R. 24; Appellee's Ex. 11). This duplicate title meant that the title that Adam sent to AFC after receiving the $10,000 payment was worthless. (Tr. 18, 24;

---

[2] Appellant testified that he began to have financial difficulties in "mid to late 2002," when new car dealers began offering extremely competitive deals. (Tr. at 76.) While the stated cause suggests that appellant was referring to financial difficulties of Berry & Cox, the question referred to appellant's personal financial difficulties. Of course, it is not unreasonable, in light of appellant's ownership of the entire corporation, to believe that financial difficulties for Berry & Cox could result in financial difficulties for appellant personally.

Appellee's Ex. 10 at 2.) Sanders testified that AFC had not been repaid the $10,000. (Tr. at 25.)

Appellant filed a petition under Chapter 7 of Title 11 of the United States Code on April 3, 2003 in the United States Bankruptcy Court for the Northern District of Alabama, Eastern Division. On Schedule F, he listed this debt of Berry & Cox, which he had personally guaranteed, to AFC. (Doc. 2 at 1.) Under 11 U.S.C. § 523(c), "unless the creditor seeks a timely adjudication, a claim for an alleged willful and malicious injury by the debtor unto a creditor or the creditor's property will be discharged under a Chapter 7 discharge." *In re Jenkins*, 258 B.R. 251, 257 (Bankr. N.D. Ala. 2001). On June 7, 2003, AFC filed an Adversary Proceeding Complaint in the bankruptcy court seeking a determination that the debt scheduled by Berry was nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4) & (6). (Compl.)

Appellant put forth two primary defenses. On the specific matter of the missing Ford truck, he testified that it was never added to the floor plan financing agreement with AFC because Berry & Cox sold the vehicle to a third party prior to the date that AFC established that the vehicle had been added to the agreement. (Tr. 87-97.) As a second grounds for his defense, Berry argues that he was not actively involved in the management of Berry & Cox, particularly in the alleged floor plan participation, and thus cannot be liable for the debt in his personal bankruptcy. (Doc. 2 at 14.)

The bankruptcy court found for AFC on the claim now at issue, that of the debt on the Ford truck sold out of trust, and entered a judgment on May 25, 2004, in favor of appellee

4

and against appellant for $13,396.90, which included interest and other amounts due on the $10,000 principal indebtedness. (Tr. at 179; Doc. 2 at 2.) Appellant filed his notice of appeal on June 3, 2004. (Doc. 2 at 2.)

## II. STANDARD OF REVIEW

A bankruptcy court's findings of fact shall not be set aside unless they are clearly erroneous. Fed. R. Bankr. P. 8013; *In re Old Naples Sec., Inc.*, 223 F.3d 1296, 1302 (11th Cir. 2000). However, conclusions of law made by the bankruptcy court are subject to de novo review. *In re Brown*, 303 F.3d 1261, 1265 (11th Cir. 2002). This court's test when reviewing a decision from the bankruptcy court under the clearly erroneous standard "is 'not whether a different conclusion from the evidence would be appropriate, but whether there is sufficient evidence in the record to prevent clear error in the trial judge's findings.'" *Olympia & York Fla. Equity Corp. v. Bank of N.Y. (In re Holywell Corp.)*, 913 F.2d 873, 879 (11th Cir. 1990) (quoting *Highland Vill. Bank v. Bardwell (In re Bardwell)*, 610 F.2d 228, 230 (5th Cir. 1980)).

## III. DISCUSSION

The bankruptcy court found in favor of AFC on its claim under 11 U.S.C. § 523(a)(6). (Tr. at 179.) That subsection precludes the discharge of a debt in bankruptcy when that debt is "for willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6) (2004). To establish that a particular debt qualifies as nondischargeable under that subsection, a creditor must satisfy four requirements: "(1) the Debtor committed a wrongful and intentional act; (2) the act necessarily (proximately)

caused the injury to the creditor; (3) the Debtor acted with the specific intent to cause injury; and (4) the act of the Debtor was without just cause or excuse." *In re Jenkins*, 258 B.R. at 257 (citing, *inter alia*, *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)). The first requirement is the one most in dispute here because its satisfaction, under the circumstances of this case, will determine whether the other requirements have been met.

**A.     Berry & Cox violated its floor plan financing agreement with AFC.**

The bankruptcy court heard live testimony about the details of the alleged transactions concerning the Ford truck and determined, based on that testimony and the documentary evidence, that AFC's version of the events was due to be credited. Specifically, the trial judge said:

> The court is persuaded that the dealership did apply for the floor plan [financing on the Ford truck] as presented by the plaintiff; did that at a time when it did not have possession of the vehicle; did that at a time when it no longer had rights to negotiate the title or give a security interest in the vehicle; and then did not pay the floor plan for which it received the money.

(Tr. at 178.) Appellant has the burden of showing that the bankruptcy court's factual findings are clearly erroneous. *United States v. May*, 211 B.R. 991, 993 (M.D. Fla. 1997); *see also* Fed. R. Bankr. P. 8013. It has not done so in this case.

Appellant argues that the evidence, specifically appellant's exhibits AA through LL, shows that Berry & Cox floor planned the Ford truck with a financier other than AFC and sold the car out of its inventory before the date that AFC claims that it received an application for floor plan financing on the truck. (Tr. 168-69; Doc. 2 at 19-20.) However,

6

as the bankruptcy court noted, this explanation proffered by appellant is not inconsistent with appellee's allegation that Berry & Cox later applied for, and received, financing on the vehicle from AFC. (Tr. at 177-78.) The court explained its rationale:

> There are two explanations presented to the court on this Ford [truck] that are not necessarily in conflict. The defendant presents the evidence as presented in Exhibits AA through LL to show the transactions on the Ford with a purchase at an auction and a sale to Courtesy Ford and title delivery. This vehicle under these exhibits was floor planned with a lender other than the plaintiff.
>
> After the dates of these transactions the plaintiff presents a set of facts of a request for floor planning of the vehicle to the plaintiff from the defendant, that application being approved and a check issued as requested for ten thousand dollars. When the vehicle was not found in the inventory, then the plaintiff then sought to obtain its lien noted on the certificate of title from the state of Alabama and was informed that a title had previously been issued on this vehicle through a third-party and its application for a lien to be noted on the certificate of title was denied. This vehicle has not been recovered and the debt has not been paid.

(Tr. at 177-78.)

No clear error is present in the bankruptcy court's understanding of the facts as found in the evidence or the factual findings drawn from that understanding. The evidence indicates that Berry & Cox requested financing from AFC, (Appellee's Ex. 10 at 3); that AFC sent a check to Berry & Cox in response to this request, (*Id.* at 1); that AFC then obtained possession of at least some form of the paper title to the Ford truck, (*Id.* at 2); that the Alabama Department of Revenue informed AFC that a valid title to that vehicle had already been issued to some other entity, (Appellee's Ex. 11); and that AFC has not recovered the money it provided to Berry & Cox, (Tr. at 25). The documentary evidence

7

provides a sound basis to infer that AFC, rather than appellant, presented the full version of the facts. Therefore, the bankruptcy court reasonably concluded that Berry & Cox acted improperly in regards to the Ford truck at issue in this case.

**B.    There is no clear error in the bankruptcy court's finding that appellant was an active participant in the fraud.**

However, a finding that Berry & Cox was culpable does not by itself resolve the issue of whether appellant himself "committed a wrongful and intentional act." *In re Jenkins*, 258 B.R. at 257. Appellant argues that even if Berry & Cox is liable to AFC, his personally guaranteed debt should remain dischargeable in a Chapter 7 bankruptcy. (Doc. 2 at 12.) To support this argument, he contends that the bankruptcy court erred in its finding that Berry "actively participated" in the improper floor plan financing of the Ford truck. (*Id*. at 14-18.)

The Eleventh Circuit has approved of the holding that "a personal debtor who, as an officer of a corporation, actively participates in the conversion of property which is subject to the security interest of a third-party, is personally liable to said party and thus the debt is nondischargeable pursuant to section 523(a)(6)." *Ford Motor Credit Co. v. Owens*, 807 F.2d 1556, 1559 (11th Cir. 1987). Therefore, a corporate officer may in his personal bankruptcy discharge a corporate debt that he is liable for even if that debt arises from wrongful corporate action, but only if that officer did not "actively participate" in the wrongdoing.[3]

---

[3]   This holding is consistent with the holding of the United States Supreme Court that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)" and thus remain dischargeable. *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998). "Active participation" clearly means something more than recklessness or negligence.

In the present case, the bankruptcy court found that appellant "actively participate[d] in the obtaining of the ten thousand dollar floor plan [payment] without a repayment as required." (Tr. at 179.) The court based this conclusion largely on its determination that appellant lacked credibility regarding the details of the Ford truck's history with Berry & Cox. (*Id.* at 178-79.) The court gave the following reasoning for this decision:

> The court concludes that the defendant is liable for this activity. It is persuaded by the cavalier testimony of the defendant that, well, I don't know about how that title got to the plaintiff, I wasn't actively involved in the operation of the dealership, and then turning around and testifying in detail how the same vehicle was financed at a previous time with another lender. The defendant seeks to claim ignorance when convenient to the defendant and presents precise evidence when helpful to the defendant. This testimony by the defendant has persuaded the court that the defendant did actively participate in this fraud and did actively participate in the obtaining of the ten thousand dollar floor plan without a repayment as required.

(*Id.* at 178-79.) This conclusion that appellant's version of the events was not true or complete is a finding of fact based on the bankruptcy court's determination of appellant's credibility after direct observation of his in-court testimony. The Federal Rules of Bankruptcy Procedure provide that "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses," Fed. R. Bankr. P. 8013, and when factual findings require an assessment of witness credibility, additional deference to the trier of fact is required. *See, e.g.*, *United States v. McPhee*, 336 F.3d 1269, 1275 (11th Cir. 2003); *Handeen v. LeMaire (In re LeMaire)*, 898 F.2d 1346, 1349 (8th Cir. 1990); *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 575

9

(1985)); *Whittington v. Gilbralter Savings & Loan Ass'n (In re Spain)*, 103 B.R. 286, 289 (N.D. Ala. 1988).

Appellant argues that his testimony before the bankruptcy court shows that he rarely dealt directly with AFC and was merely an uninvolved owner of the company while his son managed it. (Doc. 2 at 14-18.) However, appellant also testified in detail about his version of the disposition of the Ford truck prior to the date AFC issued a check for its financing. (Tr. at 78, 88-97.) The bankruptcy court observed that appellant was able to provide detailed exculpatory evidence while claiming ignorance when asked about details that would be harmful to his version of the facts; the court relied on the disparate levels of knowledge claimed by appellant relative to the particulars of Berry & Cox's business to find that appellant was not credible. (*Id.* at 178-79.)

There is other circumstantial evidence that supports the bankruptcy court's credibility determination. As noted above, before the bankruptcy court appellant was evasive and claimed no knowledge of Berry & Cox's records concerning the money AFC sent for the Ford truck's financing. (*Id.* at 77, 80-81.) Appellant has not provided this court any explanation for his lack of knowledge in this area, nor has he explained the email request from Berry & Cox for financing from AFC, nor how AFC received an ultimately worthless title to the vehicle in question. Furthermore, the timing of the events in this case provides additional circumstantial evidence of appellant's culpability. Appellant, or the company he owned, began having financial difficulties just a few months before Berry & Cox requested

that AFC floor plan the Ford truck. (Tr. at 76.) These financial troubles provide a clear motive for appellant to act fraudulently at AFC's expense.

As noted above, appellant has the burden of showing that the bankruptcy court's factual findings are clearly erroneous. *United States v. May*, 211 B.R. 991, 993 (M.D. Fla. 1997); *see also* Fed. R. Bankr. P. 8013. Additionally, because it is unlikely that a debtor will admit to fraud, courts are permitted to examine circumstantial evidence to deduce fraudulent intent. *See, e.g.*, *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (11th Cir. 2002); *In re Johnson*, 301 B.R. 590, 597 (Bankr. N.D. Ala. 2003). Under this framework, the court finds that there is no clear error in the bankruptcy court's finding that appellant had actively participated in the wrongdoing at Berry & Cox.

**C.     The determination that appellant was an active participant in the fraud against Berry & Cox effectively resolves the issue of nondischargeability.**

The other three elements relevant to the determination of the nondischargeability of appellant's debt to AFC are not in serious dispute in this case. *In re Jenkins*, 258 B.R. at 257. The actions of Berry & Cox, and by extension of appellant, were clearly the sole cause of AFC's loss on the Ford truck. The bankruptcy court's finding that appellant was an active participant in the fraud compels a finding that appellant acted with the specific intent to cause the loss to AFC, without any just cause or excuse. As previously noted, a court is justified in finding fraudulent intent on the part of a debtor through circumstantial evidence. *See, e.g.*, *Vill. of San Jose*, 284 F.3d at 790; *In re Johnson*, 301 B.R. at 597.

## IV.  CONCLUSION

For the foregoing reasons, the court finds that AFC has satisfied all four of the elements for nondischargeability of appellant's debt under § 523(a)(6). Therefore, the decision of the bankruptcy court will be affirmed. An Order in accordance with this Memorandum Opinion will be entered contemporaneously with this Opinion.

**DONE** this the 22nd day of February, 2005.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE